## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDERICK TELLES; and )
JOSEPHINE TELLES, )
)   2:25-cv-447
           Plaintiffs, )
)
      vs. )
)
STARR INDEMNITY & LIABILITY )
COMPANY, )
)
          Defendant. )
)

## MEMORANDUM ORDER

**J. Nicholas Ranjan, United States District Judge**

There are two pending motions before the Court: (1) the Telleses' motion to remand (ECF 11); and (2) Starr Indemnity & Liability's motion to dismiss (ECF 7). Both motions have been fully briefed and are ready for disposition. On careful review, the Court denies both motions.

## BACKGROUND

Frederick and Josephine Telles filed a complaint in the Westmoreland County Court of Common Pleas, alleging one count of breach of contract and one count of bad faith against Starr Indemnity & Liability Company. ECF 1-1. Starr timely removed to this Court. ECF 1.

The complaint alleges as follows. On April 8, 2024, while working for his employer, American Air Liquide, Inc/Airgas Inc., Mr. Telles was hit by a vehicle, resulting in severe physical injuries. ECF 1-1, ¶¶ 6, 8-11. The driver of the vehicle was insured by Progressive with a policy limit of $15,000 per person and $30,000 per incident for bodily injury liability coverage. *Id.* at ¶ 15. The Telleses settled with Progressive for the policy limit. *Id.* at ¶¶ 16-17. Because the Progressive coverage on the other driver's vehicle was insufficient to compensate the Telleses for their

damages, the vehicle was considered an underinsured motor vehicle as defined by Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL). *Id.* at ¶ 18; 75 Pa. C.S.A. § 1702.

American Air Liquide, Inc./Airgas had purchased an insurance policy from Starr that was in effect at the time of the accident. ECF 1-1, ¶¶ 20-21. Mr. Telles, believing that the Starr policy included underinsured motorist (UIM) coverage, engaged with Starr, attempting to assert a claim for UIM benefits. *Id.* at ¶¶ 22-47. In response, Starr produced a form that had previously been executed by American Air Liquide, Inc./Airgas and that had rejected UIM coverage for the policy at issue. *Id.* at ¶¶ 48-50. The form was signed by someone named "Mark Vandevere," with the title of "Director of Risk Management of American Air Liquide, Inc." ECF 1-1, ¶ 76 and p. 167 (Exhibit 31).[1] Based on this document, Starr concluded that there was no UIM coverage, and so rejected the Telleses' claim.

On April 9, 2025, Starr moved to dismiss the complaint, relying on the UIM rejection form and arguing that that precluded any recovery here. ECF 7. While that motion was pending, on May 1, 2025, the Telleses moved to remand the case to the Westmoreland County Court of Common Pleas. ECF 11.

## DISCUSSION & ANALYSIS

## I.    The Telleses' motion to remand (ECF 11).[2]

Federal district courts are courts of limited jurisdiction. They "may not exercise jurisdiction absent a statutory basis." *Home Depot U.S.A., Inc. v. Jackson*,

---

[1] The parties do not appear to dispute that Mr. Vandevere was, in fact, the Director of Risk Management for American Air Liquide, Inc.

[2] Although the Telleses' motion to remand was filed after Starr's motion to dismiss, the Court addresses it first because the Court must determine whether it has jurisdiction before examining the merits. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (stating that federal courts can't exercise jurisdiction without statutory basis.

139 S. Ct. 1743, 1746 (2019).  What's more, "[r]emoval statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Manning v. Merill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (cleaned up). And a defendant who removes a case "carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court." *Id.* (cleaned up). That said, the Court must be cautious when deciding to remand a case, "lest it erroneously deprive a defendant of the right to a federal forum." *Hunter v. Greenwood Tr. Co.*, 856 F. Supp. 207, 211 (D.N.J. 1992).

The Telleses cite extensively to the Declaratory Judgment Act and *Reifer v. Westport Insurance Co.*, 751 F.3d 129 (3d Cir. 2014) for the proposition that this Court should decline to exercise jurisdiction over this case under the DJA because the case presents a novel question of state law.  ECF 12, pp. 3-8.  The Telleses also argue that in cases that involve declaratory claims and non-declaratory claims, federal courts may still decline to exercise federal jurisdiction over the non-declaratory claims, citing extensively to *Columbia Gas of Pennsylvania v. American International Group*, No. 10-1131, 2011 WL 294520 (W.D. Pa. Jan. 27, 2011) (Ambrose, J.), *abrogated by Rarick v. Federated Service Insurance Co.*, 852 F.3d 223 (3d Cir. 2017).  ECF 12, pp. 8-10.

There are three critical flaws in the Telleses' arguments.

First, their complaint does not include a declaratory-judgment claim.  *See* ECF 1-1.  This alone is a reason to deny the motion to remand.  The authority for a district court to remand a declaratory case springs from the Declaratory Judgment Act or a similar state analogue.  *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).  If there is no declaratory claim or even request for purely declaratory relief (as is the case here), then the Court's discretion to remand doesn't exist.  *Carney v. GEICO*, No. 17-1486, 2017 WL 10665106, at *3 (W.D. Pa. Dec. 12, 2017) (Mitchell, M.J.) (report and recommendation) ("Nowhere in the Complaint does the Plaintiff cite the federal

Declaratory Judgment Act, 28 U.S.C. § 2201(a), or the Pennsylvania Declaratory Judgments Act, 42 Pa. C.S. §§ 7531-41, and he does not seek a declaratory judgment.").[3]

Second, even if the case had been brought as a single declaratory-judgment claim, remand is not ***required***. The Court would then only have the ***discretion*** to remand a purely declaratory action. Guided by the factors set forth in *Reifer*, the Court finds that, as a whole, they do not warrant discretionary remand here. *Reifer*, 751 F.3d at 140 (stating that the "relevant considerations for whether a court must decline jurisdiction under the DJA" are: "(1) A general policy of restraint when the same issues are pending in a state court; (2) An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; (3) Avoidance of duplicative litigation." (cleaned up)).

Here, there are no pending or duplicative cases in state court; there are no procedural fencing concerns; convenience to the parties and counsel is neutral given that Westmoreland and Allegheny Counties are adjacent; and federal courts frequently decide (often unsettled and novel) UIM or uninsured motorist (UM) legal issues.[4] For these reasons, the Court declines to exercise its discretion to remand the

---

[3] This report and recommendation was never formally adopted by the district court, and the case was eventually remanded to the state court after the plaintiff filed an unopposed motion to remand. *Carney v. Geico*, No. 17-cv-1486, ECF 20, ECF 21, ECF 22. However, the reasoning in the report and recommendation is persuasive because it involves the exact procedural scenario before the Court in this case.

[4] The Telleses argue that remand is appropriate because no state court has decided the underlying legal issue here—*i.e.*, whether the risk director has the authority to sign the rejection form. But "[f]ederal courts routinely resolve issues of state law relating to insurance, including UIM benefits and bad faith[,]" *Carney*, 2017 WL 10665106, at *3 (collecting cases), even if the law is unsettled, because federal courts sitting in diversity "must predict what the Pennsylvania Supreme Court would do." *City of Erie, Pa. v. Guar. Nat. Ins. Co.*, 109 F.3d 156, 159 (3d Cir. 1997). This alone is enough for the Court to decline to exercise its discretion to remand.

case (even if it had been brought as purely one for declaratory relief).

Third, had the case been brought with both a declaratory-judgment claim and the legal claims now in the complaint, these are independent claims, and would require the Court to retain jurisdiction. *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017) (rejecting the "heart of the matter" test and holding "that the independent claim test is the most appropriate one").

As such, the Court denies the Telleses' motion to remand.

## II.    Starr's motion to dismiss (ECF 7).

Having determined that exercising jurisdiction is appropriate, the Court turns to Starr's motion to dismiss. To begin with, the Court generally agrees with Starr that the UIM rejection form—if valid—would bar the claims in this case. However, the Court must deny the motion as premature, as some limited discovery is necessary before the Court can definitively decide this issue.

Under the MVFRL, "[t]he named insured . . . may reject underinsured motorist coverage by signing [a] written rejection form[.]" 75 Pa. C.S.A. § 1731(c). The statute includes an example of the required rejection form. *Id.* The statute requires that insurers "print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location" and, importantly here, that "[t]he forms must be signed by the first named insured and dated to be valid." *Id.* at § 1731(c.1). "Any rejection form that does not specifically comply with [Section 1731] is void." *Id.*

"In order to be valid, UM or UIM rejection forms must comply with the requirements of section 1731(c.1) as follows: the UIM rejection must appear on a sheet separate from the UM rejection; the first named insured must sign the rejection; and the rejection must be dated." *Winslow-Quattlebaum v. Md. Ins. Grp.*, 752 A.2d 878, 882 (Pa. 2000) (holding that insured validly waived UIM coverage). Section 1731(c.1) "does not also require that UIM rejection language stand alone on a separate piece of paper from any other election or rejection of coverage." *Keeler v.*

*Esurance Ins. Servs., Inc.*, No. 20-271, 2021 WL 3417500, at *4 (W.D. Pa. July 12, 2021) (Kelly, M.J.), *report and recommendation adopted* (Aug. 2, 2021), *aff'd*, No. 21-2449, 2022 WL 10319919 (3d Cir. Oct. 18, 2022).

The UIM rejection form at issue here appears in the following form:

COMMERCIAL AUTO
CA U 011 11 13

## PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION FOR POLICIES OF FIVE OR MORE VEHICLES

| Policy Number: | Policy Effective Date:<br>07/01/22 |
|---|---|
| Company:<br>STARR INDEMNITY & LIABILITY COMPANY | |
| Producer:<br>Marsh USA Inc. | |
| Applicant/First Named Insured:<br>American Air Liquide Inc. | |

*(vertical text in left margin:)* 25CI00949  02/25/2025 04:33 PM Westmoreland County

Pennsylvania law permits you to make certain decisions regarding Underinsured Motorists Coverage. This document describes this coverage and the options available.

You should read this document carefully and contact us or your agent if you have any questions regarding Underinsured Motorists Coverage and your options with respect to this coverage.

This document includes general descriptions of coverage. However, no coverage is provided by this document. You should read your policy and review your Declarations page(s) and/or Schedule(s) for complete information on the coverages you are provided.

**Mandatory Offer Of Underinsured Motorists Coverage**

Underinsured Motorists Coverage provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury caused by an automobile accident.

Please indicate your choices by initialing and/or signing next to the appropriate item(s) where indicated below.

**1. Selection Of Underinsured Motorists Coverage**

| (Initials) | |
|---|---|
| _____ | I select Underinsured Motorists Coverage at limits equal to the limits of my Liability Coverage. |

_____     _____
Applicant's/First Named Insured's Signature          Date

EXHIBIT
29

CA U 011 11 13                © Insurance Services Office, Inc., 2013                Page 1 of 2

**2. Rejection Of Underinsured Motorist Protection**

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

_____    7/7/22
**Signature of First Named Insured**                    **Date**

**3. Rejection Of Underinsured Motorists Coverage At Limits Equal To Liability Coverage Limits**

Please indicate by initialing below whether you select Underinsured Motorists Coverage at limits less than the Liability Coverage limits of your policy.

**(Initials)**

_____    I reject Underinsured Motorists Coverage at limits equal to the limits of my Liability
Coverage and I select the following lower limits.

**(Choose one):**

| (Initials) | Split Limits | OR | (Initials) | Combined Single Limit |
|---|---|---|---|---|
| _____ $ | 15,000/30,000 | | _____ | $ 35,000 |
| _____ | 25,000/50,000 | | _____ | 50,000 |
| _____ | 50,000/100,000 | | _____ | 100,000 |
| _____ | 100,000/300,000 | | _____ | 250,000 |
| _____ | 250,000/500,000 | | _____ | 350,000 |
| _____ | 500,000/1,000,000 | | _____ | 500,000 |
| _____ $ _____ | | | _____ | 1,000,000 |
| | (Other) | | _____ $ _____ | |
| | | | | (Other) |

_____    _____
**Applicant's/First Named Insured's Signature**    **Date**

Page 2 of 2          © Insurance Services Office, Inc., 2013          CA U 011 11 13

*(left margin, vertical:)* 02/25/2025 04:33 PM Westmoreland County   25CI00949

ECF 1-1, pp. 157-58.

Starr argues that the Court should dismiss the Telleses' complaint because Mr. Telles's employer waived UIM coverage and thus no coverage is available. ECF 8, p. 2. The Telleses argue that the form is invalid. They mainly argue that the form "must be signed by the first named insured," which they interpret to be only an

executive officer of the company, not the Director of Risk Management who signed it. ECF 13, pp. 4-5.

The Telleses' reading of the statute is too cramped. True, the MVFRL doesn't define "first named insured" and there isn't a Pennsylvania Supreme Court case interpreting the term in the context of the UIM provision. In situations where there is no controlling state law, federal courts sitting in diversity "must predict what the Pennsylvania Supreme Court would do." *City of Erie v. Guar. Nat. Ins. Co.*, 109 F.3d 156, 159 (3d Cir. 1997).

There is little doubt that the Pennsylvania Supreme Court would hold that the risk management director of a company would qualify as a first-named insured under Section 1731. In the Court's view, the critical question of whether a signature of a corporate representative can form the basis of a valid rejection under Section 1731 is not the title of the corporate representative, but whether the corporate representative had the actual or apparent authority to bind the company. *Bolus v. United Penn Bank*, 525 A.2d 1215, 1221 (Pa. Super. Ct. 1987) (explaining that an agent can bind a principal if the agent has actual authority, implied authority, apparent authority, or authority by estoppel). An agent of a corporation, such as a Director of Risk Management, can bind an authority so long as they are acting within the scope of actual or apparent authority. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 335 (W.D. Pa. 2020) (Ranjan, J.) (discussing principles of agent authority).

Indeed, the Third Circuit has recognized that risk managers have valid actual authority, or at least apparent authority, to bind their employer to a waiver of UM/UIM coverage. *Travelers Indem. Co. of Ill. v. DiBartolo*, 171 F.3d 168, 172, n.8 (3d Cir. 1999). And another judge on this Court recently held that a Casualty Risk Manager's signature on a UM/UIM rejection form rendered the rejection valid under Section 1731 in a case with similar facts—stating that there was "no dispute that Ms. Osting was the Casualty Risk Manager for ITW and that she executed a waiver for

its benefit." *Grenell v. Zurich Am. Ins. Co.*, No. 21-36, 2022 WL 4386638, at *3 (W.D. Pa. Sept. 22, 2022) (Cercone, J.) (interpreting Section 1731, citing to *DiBartolo*, and granting defendant's motion to dismiss where plaintiff was injured while driving his work vehicle and alleged that defendant improperly rejected his claim for UM/UIM benefits); *see also Catania v. Zurich Am. Ins. Co.*, No. 13-1278, 2015 WL 11112058, at *2 (W.D. Pa. Mar. 24, 2015) (Bissoon, J.) (holding that vice president's signature satisfied the requirements of Section 1731).

In support of their position that a risk management director is not a "first-named insured," the Telleses cite *Miller v. Royal Insurance Co.*, 510 A.2d 1257 (Pa. Super. Ct. 1986), *aff'd*, 535 A.2d 1049 (Pa. 1988). ECF 13, p. 5. In *Miller*, the Pennsylvania Superior Court determined that "stacking" of uninsured motorist coverage was not permitted under a fleet policy. *Miller*, 510 A.2d at 1258. In doing so, the Superior Court agreed with the trial court that owners and officers are "class one" insureds under a policy issued in the name of a corporation. *Id.* The Telleses argue that *Miller* supports the proposition that only an executive of a corporation can execute the rejection form and reject UIM coverage as a first-named insured. ECF 13, p. 5. But *Miller* does not state this. The court there didn't rule that ***only*** executives are "class one" insureds. In fact, the court expressly stated that it was not deciding that issue because it was "irrelevant." *Miller*, 510 A.2d at 1258. So, *Miller* doesn't move the needle here. *Id.* at 1257-59; *see also U.S. Fid. and Guar. Co. v. Tierney Assocs., Inc.*, 213 F. Supp. 2d 468, 473 (M.D. Pa. 2002) ("Instead, the *Miller* court was primarily concerned with the stacking issue, and since it found stacking was not available in that instance, the court determined that the issue surrounding the designation of the class I insured was irrelevant"); *Hunyady v. Aetna Life & Cas.*, 578 A.2d 1312, 1314 (Pa. Super. Ct. 1990) (stating that the court in *Miller* didn't rule on whether officers are class one insureds), *aff'd*, 606 A.2d 897 (Pa. 1992); *Lastooka v. Aetna Ins. Co.*, 552 A.2d 254, 257 (Pa. Super. Ct. 1988) (distinguishing *Miller* in

the context of personal auto policies).  There is thus no support for the Telleses'
argument that only an executive has the authority to waive UIM coverage on behalf
of the company.

All that said, the Court cannot grant the motion to dismiss because there is an
open factual issue.  Just because Mr. Vandevere held the title of "Director of Risk
Management" doesn't mean that he had the actual or apparent authority to bind the
company.  The Court cannot infer as much simply based on a job title—a title which
may carry different duties depending on the company at issue and the employee's
particular job responsibilities.  Therefore, the Court will deny the motion to dismiss,
and order limited discovery into whether Mr. Vandevere: (1) was, in fact, the
signatory on the form; (2) held the title of Director of Risk Management; and (3) had
the authority to bind the corporation.  After this discovery is completed, Starr is free
to file a summary-judgment motion if there are no material factual disputes on these
issues and its position remains the same.[5]

---

[5] The Telleses' separate bad-faith claim rises and falls on this same coverage issue,
and so the motion to dismiss that claim is also denied as being premature.  *Keefe v.
Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000) (holding that "in
order to recover under a bad faith claim, a plaintiff must show (1) that the defendant
did not have a reasonable basis for denying benefits under the policy; and (2) that the
defendant knew or recklessly disregarded its lack of reasonable basis in denying the
claim"); *Catania*, 2015 WL 11112058, at *2 ("Likewise, this valid [UM and UIM]
rejection form[] preclude[s] Catania from stating a claim in Count Two for bad faith
based on Defendant's failure to pay the same benefits.").

**<u>CONCLUSION</u>**

Pursuant to the above, the Court hereby **ORDERS** as follows:

(1)    The Telleses' motion to remand (ECF 11) is **DENIED**; and

(2)    Starr's motion to dismiss (ECF 7) is **DENIED**.

The Court will, by separate order, set this case down for an initial case management conference to coordinate the scheduling of limited discovery, consistent with the above.

DATE: July 25, 2025                                  BY THE COURT:

                                                                    <u>/s/ *J. Nicholas Ranjan*</u>
                                                                    United States District Judge